IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>DAVID SMALL,<br><br>            Defendant. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:16CR47DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendant David Small's Request for Hearing to Determine Admissibility of Photo Lineup [Docket No. 24]. The court held an evidentiary hearing on the admissibility of the photo lineup on August 24, 2016. The parties had the opportunity to brief the issue, and the court held closing arguments on October 11, 2016. At the hearings, Defendant was present and represented by Clayton Simms, and Plaintiff was represented by Michael J. Thorpe.[1] The court has carefully considered the evidence and testimony presented at the evidentiary hearing, the parties' memoranda, and the law and facts relating to the motion. Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Memorandum Decision and Order.

---

[1] During the evidentiary hearing, Defendant was in a separate room listening to the proceedings.

**FINDINGS OF FACT**

Around 11:00 a.m. on January 4, 2016, a man in a blue jeans, a Philadelphia Eagles windbreaker, a beanie hat, and black sunglasses robbed a Beans & Brew Coffee House in Sandy, Utah.  The store's video surveillance system recorded the robbery.  Satish Rimal and Adyson Edwards were employees working in the store during the robbery.   Rimal called the police immediately after the robbery.

Detective Andrea Hansen with Sandy City Police Department investigated the robbery.  Detective Hansen took statements from Beans and Brew employees who were working during the robbery.  In Rimal's statement, he described the robber as "a bigger set black man about 350 pounds," wearing "an eagles windbreaker, black sunglasses, a hat, and light blue denim jeans."  Adyson Edwards wrote in her statement that the robber was a tall man and wore sunglasses and a hat.  Detective Hansen found the descriptions of the robber from the employee statements to be pretty close to the images of the video surveillance from the store.

The Sandy City Police Department submitted the store's video of the robber to a local news company.  After the news report of the robbery aired, Sandy City received three phone calls identifying Defendant as a potential suspect.  Detective Hansen then ascertained Defendant's driver's license photograph for inclusion in a photo lineup.

Detective Hansen asked Lisa Wilder, a secretary in the investigations section of the Sandy City Police Department, to prepare the photo lineup.  Detective Hansen asked Wilder to include African American males who appeared to be bald and have some facial hair.  Wilder testified that she visually attempted to match the photos in the lineup with Defendant's photo.  Wilder did not

2

have access to the age of each person whose picture was used in the lineup. She did not attempt to match by shades of skin tone.

The police lineup contained six photos on the same page, which is called a "six pack." This format was used based on the police department's policy at the time. Wilder placed Defendant's photo in the third spot of the array. Wilder gave the photo lineup to Detective Hansen for approval. Detective Hansen did not ask for any changes to be made and approved the lineup.

Detective Hansen provided the photo lineup to Detective Matthew Dominguez with the Sandy City Police Department. Detective Hansen asked Detective Dominguez to present the phot lineup to the three employees at Beans and Brew who had witnessed the robbery. Detective Dominguez had not been involved with the investigation into the robbery, had not helped prepare the photo lineup, had not seen the video surveillance tape, and did not know the suspect's identity. Detective Hansen asked Detective Dominguez to present the photo lineup to prevent any potential bias that may occur in the presentation of the photo array if it was done by someone who had assisted in the investigation. It is Sandy City Police Department policy that an officer doing a photo lineup must have no knowledge of the case. Both Detective Hansen and Detective Dominguez testified that they followed that policy in this case.

Detective Dominguezz presented the photo lineup to three Beans and Brew employees on January 6, 2016. He showed the lineup to each employee individually, without other witnesses present. Detective Domingues read each witness the admonition written on the photo lineup sheet. The admonition advised the witness that the group of photographs may or may not contain

a picture of the person who committed the crime.  The admonition also stated "that hair styles, beards, and moustaches may be easily changed.  Also photographs may not always depict the true complexion of a person – it may be lighter or darker than shown in the photo."  Detective Dominguez also told the witnesses that they could take their time reviewing the photos, that if they did not see the robber it would be okay, and that they must not talk to anyone about whether or not they identify someone in the lineup.

     Satish Rimal and Adyson Edwards identified Defendant when presented with the photo lineup.  A third employee did not identify anyone in the photo lineup.  Detective Dominguez did not interview any of the witnesses.  He had the witnesses fill out the information requested on the photo lineup sheet, and gave each witness's photo lineup sheet to Detective Hansen.

     At the evidentiary hearing, Rimal and Edwards testified that the store was well-lit and not particularly crowded at the time of the robbery.  Rimal stated that he was working the in-store cash register at the time and had direct contact with the robber.  Rimal testified that he has 20/20 vision and observed the robber for approximately twenty seconds while the robber ordered a drink from him standing across the counter, which was approximately 2-3 feet away.  Rimal noted that nothing obstructed his view of the robber and he was not distracted by anything while he was observing the robber.   Rimal took the robber's drink order, prepared the drink for him, and then asked for payment for the drink when he gave it to the robber.  The robber leaned in and whispered, "I need you to stay calm.  This is a robbery and I have a gun."  The robber lifted his jacket, and Rimal looked down and saw a handgun.  Rimal opened the register and gave the robber the money. The robber took the money, grabbed his drink, and walked out of the store.

Two days after the robbery, Rimal met with Detective Dominguez at Rimal's home. Rimal testified that he recognized Defendant as the robber as soon as he saw Defendant's picture. He described his level of certainty as a 10 on a scale of 1-10. Rimal had not seen news reports about the robbery prior to being presented with the photo lineup.

At the evidentiary hearing, Adyson Edwards testified that she wears contact lenses and was wearing them at the time of the robbery. Edwards looked at the robber for about 45 senconds from a distance of about 15-20 feet. Her view was unobstructed and she was not distracted by anything else at the time. Edwards watched the robber converse with Rimal. Edwards stated that she was certain of her identification of Defendant as the robber and described her certainty as a ten out of ten. Edwards said that she recognized the robber's facial features, such as his mouth, nose, and ears. She also testified that she had not seen news reports of the robbery prior to identifying Defendant.

Both Rimal and Edwards testified that they did not think that they had difficulty in identifying someone of a different race. Rimal is half Polynesian and half Nepalese. Edwards is half Caucasian and half African-American and thought the robber was African-American or Pacific Islander because he had darker skin than most Caucasians.

The photo lineup included six African-American men. The skin colors of the men vary but the photo lineup sheet also cautions witnesses about how the lighting of a photograph can alter the look of a person's complexion. Defendant is the only person in the lineup who is smiling, but each picture has the same blue backdrop.

**CONCLUSIONS OF LAW**

Defendant challenges the admissibility of the photo lineup used in this case, arguing that the photo lineup is impermissibly suggestive. In *Simmons v. United States*, the Supreme Court held that each eyewitness identification by photograph "must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. 377, 384 (1968).

When "the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court looks to the second prong and must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994). The court must analyze each of these prongs separately and it is "only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive." *Id.* at 1262.

A defendant has the initial burden of proving that an identification procedure was impermissibly suggestive. *United States v. Wade*, 388 U.S. 218, 240 n.31 (1967). If the defendant meets this burden, the burden shifts to the government to prove that the identification was reliable independent of the suggestive procedure. *Id.* "Even if an identification procedure is suggestive, the introduction of the identification evidence does not necessarily violate a defendant's due process rights. The central inquiry is whether under the totality of the

circumstances the identification was reliable." *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir. 1989) (citations and quotations omitted).

### A. Was Photo Array Impermissibly Suggestive?

In determining whether a photo array is impermissibly suggestive, courts consider various factors, including: (1) the size of the array; (2) the manner of its presentation by law enforcement officers; and (3) the details of the photographs. *Sanchez*, 24 F.3d at 1262.

#### 1. Size of the Array

In this case, the challenged array contains six photographs. The Tenth Circuit has determined that the size of the array affects the weight given to other irregularities or problems, but is not itself a substantive factor. *Id.* at 1262. The Tenth Circuit has held that the use of a "six pack" photo array is not per se unconstitutional. *Id.* The court has recognized that the use of even just one photo may be acceptable where "the witness has had a clear opportunity to positively identify the suspect prior to the array, the witness expresses a great deal of certainty as to the identification, and the circumstances of the identification show a lack of coercive pressure on the identifying witness to make an identification. *United States v. Flores*, 149 F.3d 1272, 1279 (10th Cir. 1998).

Similarly, in this case, there is no evidence that the six-pack format influenced the identification process. The witnesses testified that they had a clear view defendant at the time of the robbery, they expressed a great deal of certainty in their identification of Defendant, and there is no evidence that there was any coercive pressure put on them to make an identification.

### 2. Manner of Presentation

The Tenth Circuit has noted that suggesting that there might be a suspect in a lineup "has long been recognized by the courts as an important factor in determining whether a pre-trial lineup procedure was impermissibly suggestive." *Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir. 1003).

In this case, Detective Dominguez instructed Edwards and Rimal not to feel compelled to select someone in the photo lineup. He told them that if they did not see the person, "that was ok." Detective Dominguez also read the admonition on the photo array to Edward and Rimal. The admonition states that the "group of photographs may or may not contain a picture of the person who committed the crime now being investigated." In addition, Detective Dominguez could not have suggested which photograph to choose because he did not know which photo was the suspect. Moreover, Detective Dominguez put no time pressures on the witnesses and told them that they could take their time reviewing the photographs. The photo lineup was also conducted only two days after the robbery, while the incident was fresh in the witnesses' minds. While Defendant argues that presenting the six pack all at once is an outdated technique, he does not cite to any case law supporting his position. Therefore, the court finds no evidence that the manner of presentation suggested that the witnesses should choose any particular photograph.

### 3. Details of the Photographs

Defendant argues that the photo lineup is suggestive because it contains people with different characteristics, such as skin tone, weight, age, and earrings. In addition, Defendant points out that he is the only person smiling. The Tenth Circuit has recognized that "[t]he lower

the number of photographs used by the officers in a photo array, the closer the array must be scrutinized for suggestive irregularities." *Sanchez* 24 F.3d at 1263. In *Sanchez*, the Tenth Circuit examined and noted the similarities and differences between the pictures at issue in a six-pack array. The court explained that "[l]ooked at after each of the differences are described by Defendant, one can see enough irregularities to raise some concern. However, presented without comment on the details (as this array was), we are not persuaded that the differences in Defendant's picture would necessarily lead the eye of the unguided viewer to his photograph given that all of the depicted persons are very similar in their physical appearance." *Id.*

While there are some differences in skin tone and weight, they do not make Defendant stand out. The photo array cautioned the witnesses that photographs "may not always depict the true complexion of a person – it may be lighter or darker than shown in the phot." In addition, a person's weight can fluctuate and the differences in weight are difficult to discern with only a head shot. Defendant also advanced an argument about height being important. But, height is not at all discernable from the head shot photographs.

The court has no concern over the fact that some of the potential suspects had earrings while others did not. It is difficult to tell on several of the pictures whether the person has an earring. As such, Defendant's lack of an earring is not very noticeable and does not make him stand out. Moreover, something like an earring can easily be changed on any given day.

Defendant further contends that his picture stands out because he is the only one smiling and the only one in a colorful shirt. While Defendant is the only person smiling, his picture has the same background and look as the others. Given the same blue backgrounds, it is not readily

9

apparent that one is a driver's license photograph and the others are booking photographs. In addition, the shirt color does not make Defendant stand out. He has on a yellow shirt, another person has on a gray shirt, another person's shirt cannot be seen because the picture is cropped so closely, and three people have on white tee shirts. The variety of shirts does not make Defendant stand out anymore than the person with a gray shirt or the person with no shirt.

The court concludes that the differences pointed out by Defendant do not rise to the level of unconstitutional suggestibility. There are no radical differences between the pictures that make Defendant stand out in an impermissible manner. Accordingly, the court concludes that the phot lineup identifications are admissible.

### B. Was Identification Reliable Based on Totality of Circumstances?

Even if the court had found that the details of the photograph were impermissibly suggestive, the government adequately demonstrated that the witnesses' identifications of Defendant were reliable based on the totality of the circumstances. *See Neil v. Biggers*, 409 U.S. 188, 199 (1972) (identifying factors relevant to determining reliability of identification); *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) (explaining that "reliability is the linchpin in determining the admissibility of identification testimony."). The witnesses had clear, unobstructed views of the robber while he was in the store. Rimal had significant interaction with the robber, and both witnesses testified that they paid particular attention to the robber. The witnesses' descriptions of the robber were accurate and were corroborated by the video surveillance footage. In addition, both witnesses stated that their level of certainty in their identification was a ten out of ten, and the identification was only two days after the robbery. Furthermore, neither witness had seen or

been influenced by news coverage of the robbery at the time of their identifications. The court finds that even if including a smiling photograph of Defendant was impermissibly suggestive, the above *Biggers* factors outweigh any taint that the smiling photograph may have caused. The totality of the circumstances demonstrate that the witnesses' identifications of Defendant were reliable. The court, therefore, concludes that even if the photo lineup was impermissibly suggestive, the photo lineup identifications were reliable enough under the totality of the circumstances to be admissible.

## CONCLUSION

Based on the foregoing, Defendant's Request for Hearing to Determine Admissibility of Photo Lineup [Docket No. 24] is GRANTED to the extent that it requested a hearing, which the court held, and DENIED to extent that it sought to have the evidence from the photo lineup declared inadmissible.

DATED this 18th day of October, 2016.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge